UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 05-22550 CIV-MOORE/GARBER

**BINDING JURY TRIAL REQUESTED**

THOMAS W. LESLIE,

      Plaintiff,

v.

CARNIVAL CORPORATION, a
Panamanian corporation d/b/a
"CARNIVAL CRUISE LINE" and/or
"CARNIVAL,"

      Defendant.
_____/

**AMENDED COMPLAINT FOR NEGLIGENCE AND JURY DEMAND**

The Plaintiff, THOMAS W. LESLIE ["LESLIE" or "Plaintiff"], by and through his undersigned counsel, sues the Defendant CARNIVAL CORPORATION, a Panamanian corporation d/b/a "CARNIVAL CRUISE LINE" and/or "CARNIVAL" [hereinafter collectively "CARNIVAL"], and alleges:

**GENERAL ALLEGATIONS**

1.    This is an action for damages in excess of the sum of Seventy-Five Thousand ($75,000.00) Dollars and jurisdiction of this claim is founded upon 28 U.S.C.A. §1333(1).

2.    Plaintiff LESLIE is a citizen of Canada born on November 14, 1941.

3.    Defendant CARNIVAL, at all relevant times, is a Panamanian corporation which does business as "CARNIVAL CRUISE LINES" and/or "CARNIVAL," has its principal place of business in Miami-Dade County; and owns and operates the cruise ship *M/S Carnival Spirit*, which was built in 2001.

## CLAIM FOR NEGLIGENCE

4.      Defendant CARNIVAL, upon information and belief, for each year between 2002-2004, inclusive, annually carried in excess of 10,000 guests with sight, hearing, or physical disabilities as guests aboard its fleet of cruise ships.

5.      During that same time period, such individuals were viewed as a "growth market" by the defendant CARNIVAL, which engaged in active marketing and advertising to influence and encourage such individuals to go on cruises on defendant's vessels, which defendant described to the public as being accessible and user-friendly to disabled individuals. These marketing pieces included, but were not limited to, defendant CARNIVAL's website, which did not disclose any specific hazards or conditions on the vessel(s).

6.      Defendant CARNIVAL, at all relevant times, knew that many of the individuals it could expect to embark on its vessels as passengers would be totally unfamiliar with the general shipboard environment and that most would be completely unfamiliar with the layout of particular ships, and would therefore require orientation and warning by defendant CARNIVAL as to any specific dangers to their safety aboard the ship(s) that were known to defendant.

7.      The plaintiff LESLIE, at all relevant times, prior to and including the time of the incident complained of, had a "disability" as defined by 42 U.S.C. §12102(2).

8.      The plaintiff, knowledgeable of defendant's claims that its vessels were "accessible" and-or user-friendly to individuals with physical disabilities, booked a cruise aboard the subject vessel.

9.      On December 19, 2004, the plaintiff boarded the vessel, which at all relevant times remained in port on navigable waters in San Diego, CA.

10.     When the plaintiff boarded the subject vessel, he was generally unfamiliar with the subject vessel; and he was not made aware by defendant CARNIVAL of any specific hazards in

2

any particular area of the ship which might require him to take special precautions for his own safety.

11.     Defendant CARNIVAL, at all relevant times, owed the plaintiff, as one of its fare-paying passengers, a general, non-delegable duty to exercise reasonable care for his safety.

12.     Defendant CARNIVAL's general duty included, but was not limited to, a non-delegable duty to exercise reasonable care to maintain the vessel in a reasonably safe condition, to correct dangerous conditions aboard the vessel about which the defendant either should have known by the use of reasonable care, and to warn passengers of dangerous conditions about which the defendant had, or should have had, knowledge greater than that of the passengers.

13.     Defendant CARNIVAL, throughout the five-year period leading up to December 19, 2004, had actual knowledge from guest comment cards, pursers' incident reports, passenger visits to ships' infirmaries, passenger injury statements, shipboard investigations, meetings of ships' Management and Safety Committees, home office statistical analyses, guest claim letters, and lawsuits, and from other sources, that some of its passengers had tripped, or stumbled, or lost their footing on stairways of defendant's vessels allegedly due, in whole or in part, to the following types of unsafe stairway conditions, singly or in combination:

    A.  Treads and/or risers and/or handrails whose dimensions, geometry and overall appearance were unsafe and non-compliant with generally accepted codes, standards, guidelines and recommendations indicating the standard of care for such structures; and/or,

    B.  The presence of foreign objects or substances on the treads (some of which were not slip-resistant).

14.     Defendant CARNIVAL knew, or should have known, that many of these incidents resulted in serious injuries and/or were related to the consumption of alcohol by passengers,

which CARNIVAL, at all relevant times, encourages and actively promotes to enhance the defendant's on-board revenue and profit.

15.   Defendant CARNIVAL, during the same time period (1999-2004), had actual or constructive notice of relevant and/or applicable national and international codes, standards, guidelines, and recommendations regarding the dimensions, geometry and appearance of treads, risers, and handrails of stairways, including but not limited to those of the International Maritime Organization (IMO), marine "protection and indemnity clubs" such as The Standard Club, maritime classification societies such as Lloyd's Register, U.S. government organizations including the U.S. Coast Guard and the Access Board for the Americans With Disabilities Act (ADA), and private groups such as the National Fire Protection Association.

16.   Many, if not all, of these codes, standards, guidelines, recommendations, groups, and entities, at all relevant times, identified the types of dangerous stairway and walkway conditions listed in Paragraph 13 (A-B), *supra*, as known, serious hazards to human safety and/or as "non-conformities" aboard vessels.

17.   For example, in 2000, defendant CARNIVAL became a defendant in the class-action *Access Now, Inc. v. Carnival Corporation, etal.*, Case No. 00-Civ-Moreno, which placed CARNIVAL on actual notice that many aspects of its vessels, including the stairways aboard "the *Spirit* Class" of CARNIVAL vessels (some of which were then under construction) were not in compliance with either the "accessibility guidelines" of the Americans With Disabilities Act (ADAAGs) and/or with Proposed Guidelines of the ADA Access Board's "Passenger Vessel Access Advisory Committee" (PVAAC), including but not limited to provisions relating to stairways (*e.g*., ADAAG 4.9) and accessible routes (*e.g*., ADAAG 4.3 & PVAAC Proposed Guidelines 410.7).

18.   The <u>Americans With Disabilities Act Accessibility Guidelines</u> (ADAAGs) and the PVAAC's <u>Proposed Guidelines for Passenger Vessels</u> (2000) at all relevant times, are virtually

identical to (and reference) many of the other existing national and international codes, standards, guidelines and recommendations for stairways and/or accessible routes referenced in paragraph 15 of this amended complaint.

19.     All of the referenced national and international codes, standards, guidelines and recommendations are required to be "taken into account" by a vessel operator in the formulation of its "safety management system" (SMS) pursuant to the International Safety Management (ISM) Code, which is a part of the U.S.-ratified international treaty known as the Safety of Life at Sea (SOLAS) treaty.

20.     All of the referenced national and international codes, standards, guidelines and recommendations are *indicia* of the standard of care regarding the configuration and maintenance of public stairways, which involve similar safety considerations whether aboard a vessel or on shore.

21.     In April 2002, defendant CARNIVAL agreed to settle the *Access Now* class action. CARNIVAL expressly agreed and undertook to have its vessels comply with certain stairway and "accessible route" provisions of the ADAAGs and the PVAAC's Proposed Guidelines for Passenger Vessels (2000). The defendant agreed if necessary to retrofit existing vessels at the next drydock.  Defendant CARNIVAL, thereby acquired a duty to exercise reasonable care in these affirmative undertakings, which was owed by defendant to its passengers.

22.     Between April 2002, and December, 2004, the subject vessel (*M/S Carnival Spirit*) and its sister "*Spirit*-class" ships, upon information and belief, entered drydock on one or more occasions each.

23.     Additionally, defendant CARNIVAL, at all relevant times, maintained a cleaning crew aboard the vessel and undertook to clean and swab (mop) the vessels prior to embarking the passengers; and the defendant thereby acquired a duty to exercise reasonable care in those undertakings, which was was owed by defendant Carnival to its passengers.

24.     Additionally, and at all relevant times, defendant CARNIVAL had a maritime duty to exercise reasonable care in furnishing alcohol to passengers aboard its vessels, including a responsibility to avoid over-serving alcohol in the first place, and to actively assist passengers who the defendant knew, or should have known, had ingested enough alcohol to be under the influence.

25.     On December 19, 2004, and at all other relevant times, there was a marble staircase which led to the ship's gymnasium ["the subject stairway"] which appeared as follows:



26.     The subject stairway, at all relevant times, was within a designated "accessible route" aboard the vessel or, alternatively, was within what should have been such a designated "accessible route" or, alternatively, was reasonably perceived or perceivable by the plaintiff and other passengers to be an "accessible route" aboard the vessel.

27.     The subject stairway, at all relevant times, presented dangerous and unsafe conditions which were well known, or should have been known, to the defendant CARNIVAL, as follows:

    A. The subject stairway had uneven and/or un-uniform and/or non-drain and/or non-slip resistant treads and risers; and/or,

6

B.  The overall dimensions and geometry of the treads and risers were inadequate and unsafe, both individually and/or in combination and ratio; and/or,

C.  Foreign substances were allowed by the defendant to puddle and remain on the treads; and/or

D.  The handrails were not continuous, were not a safe and proper distance above the treads, and/or beyond the top and bottom step(s) and/or did not have a gap between the rail and the bulkhead; and/or

E.  The appearance of the treads and risers was unsafe because of the defendant's choice not to utilize contrasting colors or patterns to distinguish the treads and/or risers.

28.    The subject stairway and the aforementioned dangerous conditions, at all relevant times, were either created by, and/or were inspected by, and/or were known to, and/or were approved by, and/or were maintained by, defendant CARNIVAL which, prior to the incident complained of, had frequent, ample, and feasible opportunities, and good cause(s) known to CARNIVAL, to renovate and refurbish the stairs and/or to correct the aforementioned dangerous and unsafe conditions in and around the subject stairway, *e.g.*, during periodic visits to the shipyard; and/or to warn passengers of the existence of such conditions aboard the vessel(s) so that the passengers could take reasonable precautions for their own safety.

29.    On December 19, 2004, when the plaintiff and his wife and daughter boarded the subject vessel in San Diego, CA in the late morning, they were accosted immediately and repeatedly by wait staff offering small glasses of champagne. The plaintiff, through the completion of his lunch, took and consumed parts of some of these.

30.    Immediately afterward, he and his family, who were unfamiliar with vessel, decided to walk to and tour the gym area on Deck 10 (Sun Deck) forward.  There (while the ship was still in port in San Diego) the plaintiff encountered the subject stairway, lost his footing, and tumbled

to the bottom, completely tearing his quadriceps muscles (bilaterally) just above each of his two knees and causing other serious injuries.

31.    The defendant CARNIVAL, at all relevant times, negligently breached its duties to the plaintiff, as follows:

A.   By negligently advertising and promoting its cruises and its vessels; and/or,

B.   By negligently misrepresenting its vessels and cruises; and/or,

C.   By negligently maintaining the subject stairway; and/or,

D.   By negligently creating the unsafe conditions and hazards of the subject stairway alleged in Paragraph 27, *supra*; and/or,

E.   By negligently failing to correct the unsafe conditions and hazards of the subject stairway alleged in Paragraph 27, *supra*; and/or,

F.   By negligently failing to warn the plaintiff about the unsafe conditions and hazards of the subject stairway alleged in Paragraph 27, *supra*; and/or,

G.   By negligently failing to establish safeguards against identified risks aboard the vessel(s), see ISM Code, §1.2.2.2; and/or,

H.   By negligently failing to comply with mandatory rules and regulations, see ISM Code, §1.2.3.1; and/or,

I.   By negligently failing to take into account applicable codes, guidelines and standards recommended by the IMO, Administrations, classifications societies and maritime industry organizations. See ISM Code, §1.2.3.2; and/or,

J.   By negligently serving alcohol to the plaintiff; and/or,

K.   By negligently failing to assist the plaintiff after serving alcohol to him; and/or,

L.    By negligently failing to exercise reasonable care for the plaintiff's safety during the subject cruise; and/or,

8

M. By committing additional negligent acts and omissions which may be revealed in discovery.

32.    The plaintiff's fall on the subject stairway, and his resulting injuries, were a direct and proximate result of the negligence of Defendant CARNIVAL and/or of the above-referenced unsafe and dangerous conditions aboard the vessel.

33.    As a consequence, the plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and aggravation of a previously existing condition. The losses are permanent and continuing in nature and the plaintiff will suffer the losses in the future.

WHEREFORE the Plaintiff demands judgment against defendant CARNIVAL for all allowable damages, costs, and interest (including pre-judgment interest) and demands a trial of right by jury or, alternatively, respectfully requests a binding jury trial pursuant to Rule 39(c) Fed. R. Civ.Proc.

Michael D. Eriksen, P.A.
ERIKSEN LAW FIRM
2161 Palm Beach Lakes Boulevard
Suite 410
West Palm Beach, FL 33409-6611
Tel:    866-493-9902 (Toll-free)
Fax:    561-533-8715
mde@travelaw.com

By: /s/ Michael D. Eriksen
        MICHAEL D. ERIKSEN
        Florida Bar No. 316016

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 28th day of April, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic filing generated by CM/ECF or some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

> Michael D. Eriksen, P.A.
> ERIKSEN LAW FIRM
> 2161 Palm Beach Lakes Boulevard
> Suite 410
> West Palm Beach, FL 33409-6611
> Tel:    866-493-9902 (Toll-free)
> Fax:    561-533-8715
> mde@travelaw.com
>
>
> By: /s/ Michael D. Eriksen
>        MICHAEL D. ERIKSEN
>        Florida Bar No. 316016

cc:    Thomas Leslie

**<u>SERVICE LIST</u>**

Leslie v. Carnival
CASE NO. 05-22550 CIV-MOORE/GARBER

Counsel for Defendant CARNIVAL:

Curtis J. Mase, Esquire
Florida Bar No. 478083
cmase@mletrial.com
Mase, Lara & Eversole, P.A.
2601 South Bayshore Drive, Suite 800
Miami, FL 33133
Tel:     305-377-3770
Fax:     305-377-0080

Leah H. Martinez, Esquire
Florida Bar No. 0017383
lmartinez@mletrial.com
Mase, Lara & Eversole, P.A.
2601 South Bayshore Drive, Suite 800
Miami, FL 33133
Tel:     305-377-3770
Fax:     305-377-0080

Counsel for Plaintiff:

Michael D. Eriksen
mde@travelaw.com
Eriksen Law Firm
2161 Palm Beach Lakes Blvd.
Suite 410
West Palm Beach, FL. 33409
Tel: 866-493-9902
Fax: 561-533-8715